UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

EDEL LEON, et al.,

    Plaintiffs,

v.                                  CASE NO. 10-20506-CIV-SIMONTON

M.I. QUALITY LAWN
MAINTENANCE, INC., et al.,

    Defendants.
_____/

LUIS SOLORZANO,

    Plaintiff,

v.                                  CASE NO. 10-20975-CIV-SIMONTON

M.I. QUALITY LAWN
MAINTENANCE, INC., et al.,

    Defendants.
_____/

**ORDER DENYING MOTION FOR RENEWED JUDGMENT AS A MATTER OF LAW**

    This matter is before the Court on Plaintiffs' Renewed Motion for Judgment as a Matter of Law (DE # 197).[1] Defendants have filed a Response (DE # 211), and Plaintiffs have filed a Reply (DE # 214). Pursuant to the consent of the parties, the Honorable Patricia A. Seitz, United States District Judge, has referred this case to the undersigned United States Magistrate Judge for all further proceedings (DE # 63). After a review of the record as a whole, and for the reasons stated below, Plaintiffs' Renewed Motion is denied.

---

[1] The Renewed Motion is DE # 146 in *Luis Solorzano v. M.I. Quality Lawn Maintenance, Inc., et al.*, No. 10-20975-CIV-SIMONTON, but references to docket entries in this Order are to those found in *Edel Leon, et al. v. M.I. Quality Lawn Maintenance, Inc., et al.*, No. 10-20506-CIV-SIMONTON, unless otherwise indicated.

I.   BACKGROUND

On July 17, 2012, after a jury trial regarding alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 to 219 (the "FLSA"), the jury returned verdicts in favor of Plaintiff Javier Gonzalez with respect to his retaliation claim, and in favor of Plaintiff Luis Solorzano with respect to his overtime wage claim (DE ## 189, 192). The jury found, however, that the two corporate Defendants, M.I. Quality Lawn Maintenance, Inc. ("M.I. Quality") and Mitchell's Lawn Maintenance Corp. ("Mitchell's Lawn"), were not joint employers of these Plaintiffs.[2] At the close of Plaintiffs' case, Plaintiffs moved for judgment as a matter of law with regard to Defendants' joint employment of Plaintiffs.[3] The motion was denied with leave to renew at the close of trial. Following the conclusion of the jury trial, Plaintiffs filed their Renewed Motion.

II.   PARTIES' POSITIONS

In their Renewed Motion, the Plaintiffs recount facts from the trial they believe establish that the two corporations at issue are joint employers of Plaintiffs Javier Gonzalez and Luis Solorzano (DE # 197 at 1-4). In reviewing the facts, Plaintiffs assert that they demonstrate that employees of M.I. Quality "controlled the means and manner of the work" performed by the Plaintiffs because Plaintiffs' work was supervised by M.I. Quality employees (DE # 197 at 4). Specifically, Plaintiffs contend that Jose Ernesto Mendoza and Mitchell Igelko supervised Plaintiffs' work, and these supervisors were M.I. Quality employees. Plaintiffs argue that these facts demonstrate the control over Plaintiffs by the employers and the employers' supervision of Plaintiffs (DE # 197 at 6), as

---

[2] In contrast, with respect to Plaintiff Edel Leon's claims of FLSA violations, the jury found that he was jointly employed by the corporate Defendants (DE # 188).

[3] Although not explicitly stated by Plaintiffs in their Renewed Motion, the undersigned assumes, given the evidence at trial and the parties' arguments with regard to the Renewed Motion, that Plaintiffs' employment with Mitchell's Lawn is not in question; instead, the question of joint employment is with regard to whether M.I. Quality may also be considered an employer of these Plaintiffs.

2

well as an agreement between the employers to share employees' services (DE # 214 at 3). In addition, Plaintiffs set forth the role of Mitchell Igelko to establish a joint employment relationship. They state that he hired these Plaintiffs and discharged Javier Gonzalez. He also, they continue, determined the amount and method of wage payments. Plaintiffs further argue that each Defendant corporation acted directly or indirectly in the interest of the other as evidenced by their respective roles – M.I. Quality obtained contracts for work, and Mitchell's Lawn performed the work (DE # 214 at 3). Thus, Plaintiffs conclude, one entity could not function without the other (DE # 214 at 5). Finally, Plaintiffs state that the payroll for Plaintiffs was prepared by Mitchell Igelko and other staff who were M.I. Quality employees (DE # 197 at 6).

In Response, Defendants contend that sufficient evidence was set forth at trial to support the jury's findings, namely, that Mitchell's Lawn hired and supervised Plaintiffs, and that Mitchell's Lawn owns the facility where Plaintiffs worked and the equipment used by them (DE # 211 at 2, 5). Thus, Defendants conclude, the jury's verdict in this regard should stand (DE 211 at 3). With regard to Mr. Mendoza, Defendants contend that Mr. Mendoza was not clear as to which entity employed him (DE # 211 at 5-6). As for payroll, Defendants argue that, while Mr. Igelko determined the Plaintiffs' pay rate and method, M.I. Quality had no function other than to acquire lawn maintenance contracts and provide employee health benefits. While an M.I. Quality employee (Kelly Phillips) prepared the payroll, Defendants continue, Mr. Igelko signed payroll checks that were drawn from the Mitchell's Lawn bank account (DE # 211 at 6).

III.   **LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 50(b), if a court does not grant a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a), a movant may renew the motion "if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496

3

F.3d 1231, 1251-52 (11th Cir. 2007) (citation omitted).  Federal Rule of Civil Procedure 50(a) provides

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may…grant a motion for judgment as a matter of law....

In considering judgment as a matter of law, the Court reviews "all of the evidence in the light most favorable to, and with all reasonable inferences drawn in favor of, the nonmoving party." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999) (citation omitted).  The existence of a genuine issue of material fact precludes judgment, but a "mere scintilla of evidence" does not create a jury question.  *Id.*  Denial is appropriate only if "reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions."  If "reasonable people could not arrive at a contrary verdict," then a motion is properly granted.  *Id.*  The court's determination is "squarely and narrowly focused on the sufficiency of evidence."  *Optimum Techs., Inc.*, 496 F.3d at 1251-52 (citation omitted).  With this standard in mind, and considering that Plaintiffs bear the burden of proof, the undersigned turns to the standard for determining joint employment under the FLSA.

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The Code of Federal Regulations provides further guidance for determining joint employment.  It states in relevant part

> A single individual may stand in the relation of an employee to two or more employers at the same time under the [FLSA]….  A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the [FLSA] depends upon all the facts in the particular case.

29 C.F.R. § 791.2(a).  In addition, 29 C.F.R. § 791.2(b) provides

> Where the employee performs work [that] simultaneously benefits two or more employers, or works for two or more employers at different times

4

> during the workweek, a joint employment relationship generally will be considered to exist in situations such as: (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

The Eleventh Circuit has developed a list of factors applicable to an analysis of joint employment. *See Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1176-77 (11th Cir. 2012), *citing Aimable v. Long & Scott Farms*, 20 F.3d 434 (11th Cir. 1994). The eight *Aimable* factors include:

> (1) The nature and degree of control of the workers; (2) The degree of supervision, direct or indirect, of the work; (3) The power to determine the pay rates or the methods of payment of the workers; (4) The right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; (5) Preparation of payroll and the payment of wages…(6) [O]wnership of the facilities where work occurred[;]…(7) [P]erformance of a specialty job integral to the business[; …and (8): I]nvestment in equipment and facilities.

*Layton*, 686 F.3d at 1176. The Court in *Layton* also identified several "principles" to guide their analysis under the eight-factor test. First, each relationship between an employee and a given employer should be considered separately in determining economic dependence. Second, no one factor determines the relationship; instead, it "depends on the economic reality of all the circumstances." *Id.* at 1177. Third, the factors are not intrinsically helpful but, instead, are valuable as tools to the extent they shed light on an employee's alleged economic dependence on a given employer, which is a fact-specific inquiry. *Id.* Fourth, the analysis to determine joint employment is not a "mathematical formula," with each factor to be decided in one employer's favor. Instead, the factors must be viewed "qualitatively to assess the evidence of economic dependence, which may point to both [employers]." *Id.* at 1178. Finally, the analysis should focus on economic dependency instead of common law employment concepts.

5

*Id.* With these legal standards as a framework, the undersigned turns to the facts of this case.

## IV.   ANALYSIS

As stated in greater detail below, Plaintiffs fail to meet the standard for judgment as a matter of law with regard to joint employment. In short, the evidence in front of the jury provided a legally sufficient basis for their findings, and, thus, judgment in favor of joint employment as a matter of law is not appropriate. The undersigned emphasizes that, as the legal standards set forth above make clear, the consideration before the Court is not whether the undersigned would have reached a different conclusion as to joint employment, based on the evidence. Instead, pursuant to Fed. R. Civ. P. 50, the question is much narrower. Under this narrower review, the undersigned finds no reason as a matter of law to disturb the jury's findings because "reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." *Mendoza*, 195 F.3d at 1244.

At the outset, the undersigned notes that the joint employment distinction was not lost on the jurors, as demonstrated by their verdicts; while they determined that the Defendant entities were not joint employers with regard to Plaintiffs Gonzalez and Solorzano, the jury found joint employment with regard to Plaintiff Edel Leon. Thus, as fact finders who weighed the economic circumstances of the respective Plaintiffs' employment as a whole, the jurors decided that the factors weighed against a finding of joint employment for these Plaintiffs. Accordingly, the verdicts demonstrate that the jurors distinguished among each employee's relationship with the respective Defendants.

Next, the undersigned turns to the eight factors of *Aimable* "squarely and narrowly focused on the sufficiency of evidence." *Optimum Techs., Inc.*, 496 F.3d at 1251-52 (citation omitted). First, the undersigned considers together (as the parties

6

have) the first two *Aimable* factors to determine whether the jury had a "legally sufficient evidentiary basis to find" as it has. Fed. R. Civ. P. 50(a). These two factors concern the nature of the respective employers' control and supervision of the Plaintiffs' work. *Layton*, 686 F.3d at 1176. Plaintiffs state that Mitchell Igelko supervised Plaintiffs work and also directed the work of Jose Ernesto Mendoza, an alleged M.I. Quality employee, who also supervised Plaintiffs' work (DE # 197 at 3-4). This satisfies the first two factors, Plaintiffs conclude, as well as the shared control provision of 29 C.F.R. § 791.2(b)(3). Defendants agree that Mitchell Igelko supervised Plaintiffs, but that he did so in his capacity as the principal of Mitchell's Lawn (DE # 211 at 5) – a conclusion Plaintiffs appear to implicitly challenge although they do not refute the legal sufficiency of the evidence underlying Defendants' claim. Defendants also note that the evidence is mixed with regard to Mr. Mendoza's true employer (DE # 211 at 5-6) – a claim regarding the sufficiency of evidence that Plaintiffs do not refute in their Reply.

Thus, while Plaintiffs challenge the weight of the evidence and the conclusions reached in light of it, Plaintiffs do not refute the legal sufficiency of the evidence to support a conclusion that Mr. Igelko supervised Plaintiffs in his capacity with Mitchell's Lawn. Moreover, while Plaintiffs consistently argue that Mr. Mendoza is an M.I. Quality employee, they do not dispute the fact that the inconsistent testimony of Mr. Mendoza regarding his employer precludes judgment as a matter of law regarding joint employment. Thus, Plaintiffs appear with the first two factors to take issue with conclusions resulting from the evidence – not the sufficiency of the evidence, itself. Such a disagreement, however, is beyond the scope of a Rule 50 motion. Therefore, considering the evidence in the light most favorable to Defendants, the undersigned concludes that "reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions" as to whether Plaintiffs were solely

7

employed by Mitchell's Lawn, given this evidence before the jury. *See Mendoza*, 195 F.3d at 1244.

The third and fifth factors concern pay. Specifically, the third factor addresses the power to determine pay rates and method of payment, and the fifth factor concerns payroll preparation and wage payments. *Layton*, 686 F.3d at 1176. Plaintiffs argue that the evidence shows that Mitchell Igelko determined Plaintiffs' pay rates and signed the paychecks, or paid cash, as he deemed appropriate. Plaintiffs further assert that payroll was prepared by office staff who were M.I. Quality employees (DE # 197 at 3, 6). Defendants acknowledge that Mr. Igelko determined Plaintiffs' pay rate and method of payment. Defendants also acknowledge that an M.I. Quality employee, Kelly Phillips, prepared payroll. Defendants assert, however, that wages were paid by Mitchell's Lawn because the related funds were drawn from a Mitchell's Lawn bank account (DE # 211 at 6) – a claim Plaintiffs do not refute in their Reply.

Thus, in a light most favorable to Defendants, the jury had before it evidence that, while an M.I. Quality employee may have prepared payroll in an administrative sense, the key decisions were made by Mitchell Igelko, the principal of Mitchell's Lawn, who paid Plaintiffs from Mitchell's Lawn funds. Incidentally, M.I. Quality's role in preparing the payroll would not necessitate as a matter of law a finding that M.I. Quality must be considered a joint employer of Plaintiffs. *See, e.g., Beck v. Boce Group, L.C.*, 391 F. Supp. 2d 1183, 1191 (S.D. Fla. 2005) (in granting summary judgment against joint employment, and considering this *Aimable* factor, noting that although second company paid wages to employees, the company appeared to only serve an administrative function and pass through payments from plaintiffs' employer, thus, demonstrating only minimal evidence of the second company's joint employment). Therefore, in the undersigned's review that is "squarely and narrowly focused on the sufficiency of evidence," the undersigned finds that reasonable minds could differ as to the

conclusions reached from this evidence, as there was sufficient evidence for the jury to reach the conclusion that Mitchell's Lawn controlled Plaintiffs' pay. See *Optimum Techs., Inc.*, 496 F.3d at 1251-52 (citation omitted); *Mendoza*, 195 F.3d at 1244.

The fourth factor addresses the right to hire, fire or modify the conditions of employees' work. *Layton*, 686 F.3d at 1176. The Defendants do not dispute that this power lay with Mitchell Igelko (DE ## 197 at 6; 211 at 6), and the parties do not further address this factor. Presumably, while they may agree that Mitchell Igelko held this power, they would disagree as to in which capacity Mitchell Igelko exercised this authority with respect to Plaintiffs. At any rate, Plaintiffs fail to develop any further argument with regard to this factor.

The sixth factor relates to ownership of the facilities where Plaintiffs' work occurred. *Layton*, 686 F.3d at 1176. Plaintiffs simply note that both corporations operated out of the same facility (DE # 197 at 3). Defendants declare that the undisputed fact is that all the equipment and facilities were owned by Mitchell's Lawn (DE # 211 at 6). Plaintiffs do not refuted this contention. Thus, the available evidence demonstrated that Plaintiffs worked out of a facility owned by Mitchell's Lawn only, with equipment owned by Mitchell's Lawn only. Given this record, the undersigned finds legally sufficient evidence for the jury to have reached its conclusion. *See* Fed. R. Civ. P. 50(b).

The parties have not raised or addressed any further arguments that relate to the remaining factors.

Beyond the eight *Aimable* factors, Plaintiffs emphasize that Defendants satisfy the guidelines for joint employment set forth in 29 C.F.R. § 791.2. Specifically, Plaintiffs argue in their Renewed Motion that evidence of Mr. Igelko and Mr. Mendoza supervising Plaintiffs' work supports a conclusion under 29 C.F.R. § 791.2(b)(3) that the entities were joint employers. Defendants did not respond to this argument. In their Reply, Plaintiffs raise additional arguments to support joint employment with regard to 29 C.F.R. § 791.2,

9

including, among others, an agreement among the employers to share the work of employees and the interdependent relationship of the corporate Defendants.

There are several problems with Plaintiffs' claims as they relate to the cited federal regulation.  First, a procedural issue presents itself because Plaintiffs raised one specific argument in their Renewed Motion, and the others were raised in their Reply, precluding Defendants' response to the additional arguments.  Moreover, the import of the one argument raised in the Renewed Motion is unclear; Plaintiffs argue that the supervision of Plaintiffs' work satisfied 29 C.F.R. § 791.2(b)(3), but that provision appears to address the supervision by one employer of another employer, or the common control of employers.  At any rate, even assuming that Plaintiffs appropriately set forth viable regulatory arguments, they must be considered in context.  The Court acknowledges the authority of the regulation but must consider it in the context of the controlling Eleventh Circuit legal standards cited above.

The above issues aside, other complications still arise.  First, Plaintiffs do not directly address the predicate language of this provision.  In particular, the provision begins, "Where the employee performs work [that] simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek,…."  Plaintiffs provide no argument as to the sufficiency of the evidence set forth to either establish that the Plaintiffs' work simultaneously was benefiting both employers, or that Plaintiffs were working for different corporate Defendants at different times in the workweek.  Finally, even if the predicate language were satisfied, 29 U.S.C. § 791.2(b) does not require a finding of joint employment.  By its own terms, it states in pertinent part "…a joint employment relationship generally will be considered to exist in situations such as…."  The plain language of the regulation is more akin to a guideline than a required finding of a court.  Thus, even if the conditions of either Plaintiff's

10

employment satisfied the parameters of this regulation, the Court is not required as a matter of law to find joint employment.

Finally, Plaintiffs assert in their Reply that the purported economic dependency of Mitchell's Lawn on M.I. Quality necessitates a finding of joint employment. Plaintiffs argue that the interdependence of the corporate Defendants, as evidenced by the fact that M.I. Quality obtained the lawn maintenance contracts that Mitchell's Lawn subsequently performed, requires such a finding. Because Plaintiffs developed this argument in their Reply, Defendants have not addressed it. Nonetheless, even assuming Defendants acknowledge the relationship between the corporate Defendants, the conclusion does not follow as a matter of law that the Plaintiffs were economically dependent on M.I. Quality and, thus, under their joint employment. Even courts that specifically consider as a factor whether a plaintiff's employer (in this case, Mitchell's Lawn) has more than one "client" than the putative joint employer (in this case, M.I. Quality), find that a single client does not as a matter of law result in a finding of joint employment. As the Second Circuit noted in *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003), this factor sheds light on the relationship between the employers but is not necessarily determinative of that relationship.

> Although neither shared premises nor the absence of a broad client base is anything close to a perfect proxy for joint employment (because they are both perfectly consistent with a legitimate subcontracting relationship), the factfinder can use these readily verifiable facts as a starting point in uncovering the economic realities of a business relationship.

*Id.* Other courts note that the finding of a single client supports but does not require a finding of joint employment. *See, e.g.*, *Lepkowski v. Telatron Marketing Group, Inc.*, 766 F. Supp. 2d 572, 581 (W.D. Pa. 2011) (stating that the "absence of a broad client base favors a finding of joint employment"). Thus, at best, Plaintiffs have identified a factor that may weigh in favor of a finding of joint employment but have not established that

they are entitled to judgment as a matter of law based upon the relationship of the corporate Defendants.

In sum, while a consideration of the *Aimable* factors is helpful for assessing joint employment, they are mere "tools" to the ultimate determination of "the degree of dependence of alleged employees on the business to which they are connected…." *Layton*, 686 F.3d at 1177. The analysis considers the economic reality upon reviewing the totality of the circumstances. In light of the Rule 50 standard, the inquiry, thus, is whether the jury had a legally sufficient basis for finding that these Plaintiffs were dependent economically on Mitchell's Lawn only. As set forth above, after a review of the totality of the circumstances, the undersigned finds that, although the evidence supporting joint employment was very strong, there is a "sufficient evidentiary basis for a reasonable jury to find for the non-moving party" with regard to the question of joint employment. *Optimum Techs., Inc.*, 496 F.3d at 1251-52. Thus, the jury's determination that Plaintiffs failed to meet their burden of proof will not be overturned.

## V.   CONCLUSION

Therefore, for the reasons stated above, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Renewed Motion for Judgment as a Matter of Law (DE # 197 in *Leon*; DE # 146 in *Solorzano*) is **DENIED**.

**DONE AND ORDERED** in chambers at Miami, Florida, on February 20, 2013.

*Andrea M. Simonton*
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
    All counsel of record